FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 0 1 2018

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| James Mitchell, **Plaintiff,** | : | **Civil Action No:** |
| vs. | : | **1:18 – CV – 0475** SCJ |
| Officer J. Ramos, Officer J. Policarpio, | : | |
| Officer Z. Bihari, Officer N. Stekettee, | : | |
| Officer W. Wood, and Chief Westenberger. | : | |
| Cobb County Jane Doe | : | |
| **Defendants** | : | **Jury Trial Demand** |

### First Amended COMPLAINT

Plaintiff, James Mitchell brings this action against the Kennesaw Police Officers Ramos, Policarpio, Westenberger, Bihari, Wood, and Stekettee; and Cobb County - Jane Doe - for conduct incident to Plaintiff's retaliatory arrest.

### I. INTRODUCTION

1.    Pursuant 42 U.S.C. § 1983 this action seeks damages from the herein named Defendant police officers in their individual capacity for the deprivation of Plaintiff's 1st, 4th, and 14th Amendment rights under the U.S. Constitution, and corollary rights under Georgia law for false imprisonment, malicious prosecution, and the intentional infliction of emotional distress.

1

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 0 1 2018

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| James Mitchell,    **Plaintiff**, | : | **Civil Action No:** |
| vs. | : | **1:18 – CV – 0475** SCJ |
| Officer J. Ramos, Officer J. Policarpio, | : | |
| Officer Z. Bihari, Officer N. Stekettee, | : | |
| Officer W. Wood, and Chief Westenberger. | : | |
| Cobb County Jane Doe | : | |
| **Defendants** | : | **Jury Trial Demand** |

## First Amended COMPLAINT

Plaintiff, James Mitchell brings this action against the Kennesaw Police Officers Ramos, Policarpio, Westenberger, Bihari, Wood, and Stekettee; and Cobb County - Jane Doe - for conduct incident to Plaintiff's retaliatory arrest.

### I. INTRODUCTION

1.      Pursuant 42 U.S.C. § 1983 this action seeks damages from the herein named Defendant police officers in their individual capacity for the deprivation of Plaintiff's 1st, 4th, and 14th Amendment rights under the U.S. Constitution, and corollary rights under Georgia law for false imprisonment, malicious prosecution, and the intentional infliction of emotional distress.

2.     This action is also against Cobb County (Jane Doe) for administering compulsory injections to pretrial detainees under the threat of physical restraint. This practice violates the 4th and 14th Amendments to the U.S. Constitution.

3.     The herein named Defendants were at all times acting under color of law.

## II. JURISDICTION

4.     This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and § 1343 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Supplemental jurisdiction is pursuant 28 U.S.C. § 1367(a).

5.     Plaintiff seeks all cost and expense pursuant 42 U.S.C. § 1988.

6.     Venue is proper in the Northern District of Georgia under 28 U.S.C. 1391(b). Defendants, at all times relevant to the actions alleged in the Complaint, resided in and conducted regular activities within the district.

7.     All charges against Mr. Mitchell were dropped for "Lack of Evidence".

8.     Ante Litem was timely filed with the City of Kennesaw.

9.     Ante Litem was hand delivered to the Cobb County Attorney.

## III. PARTIES

10.    **Plaintiff -** Mr. Mitchell is an adult person residing in Cobb County. Mr. Mitchell's address for service is:          **2774 North Cobb Pkwy**

**STE. 109 - Box 192**

**Kennesaw, GA 30152**

## IV. NATURE OF THE CASE

15.     Officer Ramos and Sgt. Policarpio were callously indifferent to Mr. Mitchell's Constitutional rights by subjecting him to an arrest without arguable probable cause and imprisoning him without probable cause. Plaintiff seeks damages from each individual for violation of the 1st, 4th, and 14th Amendments.

16.     Officer Ramos, Sgt. Policarpio, and Chief Westenberger demonstrated a reckless disregard for the truth by using materially false information to sustain the criminal process against Mr. Mitchell. Defendants exploited judicial vulnerabilities to obtain a warrant through material omissions and misstatements undermining judicial objectivity. Plaintiff seeks damages from each individual for violation of the 4th, and 14th Amendments.

17.     Chief Westenberger then demonstrated a reckless disregard for the truth by continuing prosecution of Mr. Mitchell without probable cause. It is alleged this was mask the conduct of his officers and reflects an organizational ethos callous to the compass of the Constitution. Plaintiff seeks damages from chief Westenberger for malicious prosecution and infliction of emotional distress.

18.     While he was at the Cobb County Adult Detention Center, under threat of physical restraint Mr. Mitchell was subjected to a compulsory injection of an undetermined liquid substance. Damages for this 4th and 14th Amendment violation of bodily integrity are sought from Chief Westenberger.

## V. FACTS

19.     A tree crushed Mr. Mitchell's son Jonathan, causing serious injuries that required prolonged treatment of opiate-based medication to control the pain.

20.     Upon his doctor's advice, when Jonathan had recovered enough to sit in a wheelchair, Mr. Mitchell began transporting him to a methadone treatment center in Woodstock as a precaution against opioid addiction.

21.     About 8 weeks after Jonathan began methadone treatment, Mr. Mitchell became aware of illegal drug activity occurring at the Woodstock clinic.

22.     Mr. Mitchell notified the clinic management of the drug activity and he transferred Jonathan to the Treatment Center of Kennesaw (the Clinic) to resume his treatment unmolested.

23.     A few months later, Mr. Mitchell discovered the same drug dealer from the Woodstock clinic was now selling drugs at the Kennesaw clinic.

24.     Mr. Mitchell reported this activity to the Clinic staff. In response the Clinic manager (Salvador), told the suspected dealer Mr. Mitchell had informed on him and that he should "be wary of Mr. Mitchell."

25.     The following Saturday morning, Mr. Mitchell entered the Clinic and had brief words with Salvador to determine if the manager authorized the confidential disclosure to the dealer.

26.   The following Monday, February 01 at 7:28 am, Mr. Mitchell contacted the Kennesaw Police Department (KPD) 911 and reported the drug activity. (**EXHIBIT A:** Mr. Mitchell's 1st Call to 911. 01-Feb-2016 at **07.28.47**.)

27.   Due to Salvador identifying Mr. Mitchell to the drug dealer, when he took Jonathan in for treatment that morning, he again called 911 before he entered the Clinic.

28.   When Mr. Mitchell told Salvador he notified the KPD, she asked him to leave and not return. This was the first notice given to Mr. Mitchell. (**EXHIBIT B:** Mr. Mitchell's 2nd Call to 911/Mitchell. 01-Feb-2016 at **08.33.38**.)

29.   Mr. Mitchell was in the Clinic for a total of 38 seconds.

30.   A few minutes later, when Jonathan came out of the Clinic, he informed his father, Mr. Mitchell that Salvador also demanded he not enter the entire strip-mall parking lot in the future.

31.   Since the Clinic is one-of-many businesses in the complex, Mr. Mitchell believed Salvador lacked the authority to prohibit entry to the entire parking lot.

32.   Unknown to Mr. Mitchell at the time, after he departed the Clinic, Kendra Williams (Williams), a Clinic employee called 911 and falsely alleged, "We have somebody that don't supposed to be here and we told him to leave."

33.   William's then contradicted herself and explained to the 911 dispatch, "[this morning] we were telling the patient to tell his dad not to come back in

here when he came in saying he was calling the cops and the state on this facility. And [then] our director told him to leave."

34.    Williams then said no, "[he's] not in the building" nor did he refuse to leave, but "he's outside in his car" waiting for his son to finish his treatment.

35.    The dispatcher then asked if the Clinic would like a police officer to come out to assist. Williams responded "yes". (**EXHIBIT C:** 911 / Clinic. 01-Feb-2016. The 911 recording confirms this call originated at **08:34:40**).

36.    The KPD Incident Report conflicts with the 911 time/date and shows that the KPD dispatcher falsely credited the Clinic with initiating the report and not Mr. Mitchell. (**EXHIBIT D:** KPD Incident Report. 01-Feb-2016. **08:32:59**)

37.    Officer Ramos was one of two KPD officers responding and arrived after Mr. Mitchell had already departed the Clinic and was en route to the KPD.

38.    When officer Ramos interviewed Salvador, she confirmed Mr. Mitchell had been informed just that morning not to come back in the Clinic.

39.    Immediately following Salvador's admission that he had not trespassed, officer Ramos said, "I can't arrest him unless he comes back on the property."

40.    Officer Ramos then volunteered to reissue the bar to Mr. Mitchell as a Criminal Trespass Warning (CT) on behalf of the Clinic.

41.    Officer Ramos stated to Salvador, "he must be on the premises before I can CT him." (**EXHIBIT E:** Ramos/Salvador at KPD 01-Feb-2016 at 08.48.00)

42.    She then declared, "If he even comes anywhere in the [entire strip mall] parking lot, I'll arrest him".

43.    Salvador responded, "perfect!"

44.    Even when Salvador spontaneously admitted an awareness of the alleged drug activity, officer Ramos showed no interest in investigating that felony.

45.    She didn't ask for the dealer's name, number, nor expend the slightest effort to investigate Mr. Mitchell's allegation of drug activity.

46.    After departing the Clinic, Mr. Mitchell proceeded indirectly to the KPD and arrived at the police lobby about 45 minutes after he last spoke with 911.

47.    When he entered the KPD lobby, Mr. Mitchell met officer Ramos. She was dressed in a KPD uniform, had a gun, a badge, and carried a clipboard.

48.    After Mr. Mitchell explained the history of the heroin activity, including the fact he had contacted 911 twice that morning, instead of investigating his testimony, officer Ramos issued a verbal CT (the CT) barring him from the Clinic. (**EXHIBIT F:** Ramos/Mitchell at KPD 09:20.)

49.    When Mr. Mitchell attempted to clarify the limits of the CT, the parking lot restriction specifically, officer Ramos response was elusive and deceptive and carried tones of bias creating an adversarial atmosphere.

50.    Mr. Mitchell then asked if he were suspected of a crime and officer Ramos confirmed had not been accused of a crime.

51.    At that point Mr. Mitchell concluded, accurately as it turns out, officer Ramos had no interest in the drug dealer so he ended the meeting and began walking towards the door.

52.    When officer Ramos was confronted with Mr. Mitchell walking away, she began commanding him, "Get back here!" "I'm not done with you!"

53.    Mr. Mitchell responded, "Yes you are." He then said sternly from across the room, " I can see you don't give a shit!" and he again attempted to depart.

54.    Officer Ramos then followed Mr. Mitchell outside the KPD and attempted to force Mr. Mitchell to sign the CT.

55.    Mr. Mitchell rebuked officer Ramos more sternly and said, "You aren't God!" And he again attempted to depart the KPD.

56.    When she said stop a third time, Mr. Mitchell turned around and began complying with officer Ramos demands.

57.    Officer Ramos's demeanor appeared condescending, which spurred Mr. Mitchell to again withdraw his cooperation and he departed the KPD.

58.    Just moments after he departed officer Ramos described her encounter with Mr. Mitchell to officer Bihari: (Compare to the narrative on the warrant.) "I go to the methadone clinic because he's reporting a crime there" [then the Clinic falsely alleged] "he was up there, hollering and screaming, and this and that". "So, he's up here [at the KPD] trying to report, what was going on [the

9

heroin distribution activity] and he like, starts yelling and everything and getting pissed off and saying he never did this and that and then he left while I was trying to CT him".

59.     After hearing officer Ramos's description of events, officer Bihari responded, "Well let's go get him!"

60.     However, officer Ramos's testimony to officer Bihari is not quite right.

a) "He like starts yelling and getting pissed off." The sequence is wrong. Mr. Mitchell didn't even raise his voice until after he opted to end the meeting he arranged and officer Ramos attempted to unlawfully detain him. It was only after her provocations that he said with a slightly elevated voice, "I can see you don't give a shit!" A cursory review of the events proves she did not give a shit about the heroin dealer.

b) "I was trying to CT him and he walked away". This is false. Officer Ramos had already issued *and* recorded the CT *before* Mr. Mitchell "walked away". Additionally, both Mr. Mitchell and Salvador informed officer Ramos that he had been notified of the bar and had clearly communicated his intent to comply with this nefarious demand. However, Mr. Mitchell did question the underlying motive behind restricting even his visual observations of the entire parking lot.

c) "He was yelling all the way to his car." Officer Ramos's body camera recordings and the outside approach corridor video show this statement is false.

61. After Mr. Mitchell departed the KPD he drove to his home in Kennesaw.

62. Mr. Mitchell's home is a split level with no sidewalk. There is an access gate on one side but no sidewalk or prepared surface on either side that would "invite" a visitor to invade the curtilage of his home.

63. A 7' wood privacy fence surrounds the entire back yard. The only way to enter the back yard is though the house or through a latched 8' wood gate on one side. Without opening the gate, it is impossible to view the back yard.

64. While he was on his back deck and on the phone filing a complaint with the Clinic's parent company in Florida, officer Stekettee and officer Wood suddenly appeared in his back yard. No knock, no word; they just walked right in and began screaming, "you're under arrest! Go to you're front door! NOW!"

65. Mr. Mitchell told officer Stekettee to get out of his yard but he just kept screaming, "Go to you front door! You're under arrest!"

66. Mr. Mitchell then asked, "Do you have a warrant?" "Yes" he responded. Mr. Mitchell said bullshit you have no legal authority to be here.

67. Mr. Mitchell told the officer he had no lawful authority to be in his yard and they were trespassing.

68. At that moment loud banging was heard coming from the front door. Officer Bihari's body camera shows he had attempted to enter the front door and began pounding on it after he determined the front door was locked.

11

69.     Mr. Mitchell then walked to the front of his house and through the window he saw 4 or 5 police cars and 3 or 4 additional officers at his front door.

70.     Mr. Mitchell spoke to officer Bihari through the window and asked what they wanted. He said, "We want to talk."

71.     Mr. Mitchell then challenged him to present a warrant but none was provided. Officer Bihari then began demanding that Mr. Mitchell open the door but he refused and told them to leave.

72.     Mr. Mitchell request that the officers name the charges by which they were at his home but he was only told, "we're here for how you acted".

73.     Mr. Mitchell then told the officers "you know this is color of law" and he accused them of being on an errant mission - intent on causing him harm.

74.     But rather than present a warrant or specify any charges, officer Bihari responded, "Are you an attorney?"

75.     At this point Mr. Mitchell feared for his safety and barricaded himself in his home while he attempted to contact an outside law enforcement entity.

76.     When Mr. Mitchell informed the officers he was contacting an outside agency, he then heard a female voice say over the radio "go ahead, make entry".

77.     At that moment two officers entered from the back of the house, pointed their weapons at Mr. Mitchell and forced him on the ground; whereby, he was arrested with a gun to his head.

12

78.     The front door also opened at that time and three other officers entered Mr. Mitchell's home.

79.     When Mr. Mitchell asked officer Policarpio, the senior arresting officer, why he was being arrested she said, "for how you acted" earlier at the KPD.

80.     Open Record Request show while Mr. Mitchell's home was under siege, officer Bihari asked officer Stekettee, "why did you tell him we had a warrant?" Officer Stekettee replied, "well it got him to the front door."

81.     Mr. Mitchell was transported to the KPD where he was immediately and aggressively assailed by officer Policarpio demanding, "Sign this, or go to jail!" slamming a paper copy of the CT issued to him by officer Ramos on a table.

82.     Mr. Mitchell informed officer Policarpio that the document contained perjured information and for him to sign it would be a lie.

83.     Mr. Mitchell then said to officer Policarpio, "you know what you are doing is illegal".

84.     At this point, Mr. Mitchell had still not been presented with the warrant nor told the charges against him, other than "how you acted".

85.     When Mr. Mitchell refused to affix a legible signature to the CT, officer Policarpio locked him in a cell and falsely sustained the legal process against him without probable cause or arguable probable cause.

86.     After being transferred to the Cobb County Adult Detention Center, Mr. Mitchell was forced under threat of physical restraint, and the expectation of additional violence, to accept a compulsory injection of an unknown substance.

87.     Early the next morning, Mr. Mitchell was presented a post-facto warrant charging O.C.G.A. 16-10-24(a) Obstruction, for "walking away" and O.C.G.A 16-11-39(a)(3) Disorderly Conduct, for the alleged "use of fighting words".

88.     Also, the next morning at 0730, Mr. Mitchell submitted a sworn complaint to the KPD Internal Affairs (IA) alleging constitutional violations and color of warrant. **EXHIBIT G:** Sworn Statement by Mr. Mitchell

89.     Mr. Mitchell also submitted an open records request for the associated police officer body camera recordings, the police lobby videos, the KPD holding cell video, and the video of the Clinic waiting area showing the drug activity Mr. Mitchell alleged was occurring.

90.     About 10 days later, Mr. Mitchell received incomplete documents and video in response to the open records request he submitted following his arrest.

91.     These documents had been edited by the KPD to remove several incriminating events from evidence.

92.     Officer Ramos's body camera recording of her encounter with Mr. Mitchell at the KPD had the first 60 seconds removed. This segment showed Mr. Mitchell informed her he initiated the original complaint, not the Clinic.

93.     The police lobby video recordings were denied. This denial prohibits examination of true behavior of the two witnesses alleging they were paralyzed with fear at Mr. Mitchell's raised voice when he was outside the KPD.

94.     The video recordings of the walkway outside the KPD were denied. This recordings show officer Ramos stated falsely Mr. Mitchell was yelling and cussing at her all the way to his car.

95.     The video at the KPD processing area was denied. This concealed officer Policarpio's unlawful demanded that Mr. Mitchell sign the perjured CT or go to jail!

96.     Two subsequent requests for accurate and complete records were ignored by the KPD, forcing Mr. Mitchell to hire an attorney to retrieve the records.

97.     On or about 5 February, knowing there existed no arguable probable cause to seize him at the KPD nor the probable cause to arrest him in his home, officer Westenberger forwarded charges against Mr. Mitchell for prosecution.

98.     Both misdemeanor charges against Mr. Mitchell were dropped for "lack of evidence".

99.     The Internal Review Report shows the officers conduct in all regards was considered organizational policy and practice.

Note: **EXHIBIT H** is a statement from Chief Westenberger elucidating the perspective and the significance of heroin in our community.

# VI. CAUSE OF ACTION

## Cause I

## 4th Amendment Violation - Unreasonable Seizure

Officer Ramos is being sued in her individual capacity for monetary damages.

(Paragraphs 1 through 99 are hereby incorporated by reference.)

100.   On 01 Feb 2016, 9:30 am, at the Kennesaw Police Department, Officer Ramos seized Mr. Mitchell without arguable probable cause. "It is clearly established that an arrest made without probable cause violates the 4th Amendment." Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998)

101.   Mr. Mitchell was not a criminal suspect.

102.   Prior to seizing Mr. Mitchell at the police department, officer Ramos confirmed he was not a suspect in any criminal activity.

103.   Under an objective standard, a reasonable officer in the position of officer Ramos would have know any seizure, absent an articulable reasonable suspicion of criminal activity, however temporary is unlawful.

104.   Immediately following her contact with Mr. Mitchell, officer Ramos told officer Bihari she seized him to issue a CT. A reasonable officer should know refusal to complete a CT pursuant O.C.G.A. § 16-7-2 is not probable cause.

105.    Additionally, O.C.G.A. § 16-7-21 contains no signature provision. Notice is to be "reasonable" under the circumstances as well as sufficiently explicit to apprise the trespasser of what property he is forbidden to enter.

106.    Officer Ramos had also been informed, by both Salvador and Mr. Mitchell, that he had already received notification from the Clinic and indicated his intent to comply with the request that he "not enter the Clinic".

107.    However, when officer Ramos seized Mr. Mitchell, she had already *exceeded* the requirements § 16-7-21 by issuing *and* recording oral notification.

108.    Under an objective standard, a reasonable officer in the position of officer Ramos would know O.C.G.A. § 16-7-21 a detention based on an officers desire to secure a compulsory signature is unreasonable.


109.    WHEREFORE, Plaintiff, demands judgment against officer Ramos pursuant to 42 U.S.C 1983 for seizing him without arguable probable cause, in violation of the Fourth Amendment to the U.S. Constitution.

110.    Plaintiff seeks all available damages, and seeks damages in excess of any arbitrations limits, plus costs and such relief as the Court may deem proper.


JURY TRIAL DEMAND

## Cause II

### State - False Imprisonment

Officer Ramos is being sued in her individual capacity for monetary damages.

Officer Policarpio is being sued in her individual capacity for monetary

damages. (Paragraphs 1 through 110 are hereby incorporated by reference.)

111.  On 01 Feb 2016, at or about 9:45 am, at the Kennesaw Police

Department, Officer Ramos, initiated criminal proceedings against Mr. Mitchell

without probable cause and without arguable probable cause.

112.  Mr. Mitchell wasn't shown a warrant until well after his arrest. The

warrant indicated he had been charged with a) Obstruction for "walking away"

after being issued a CT and, b) Disorderly Conduct for the use of "fighting

words" after officer Ramos attempted to seize him.

113.  Under an objective standard, a reasonable officer in the position of

officer Ramos would know that it is well established that simple verbal

criticism directed at a police officer does not amount to fighting words. Mr.

Mitchell verbally rebuked office Ramos *because* she unlawfully seized him. In

Bauer v. Noris, 713 F.2d. 408, 412 (8th Cir. 1983) "An arrest in retaliation for a

perceived slight is no lawful reason to arrest."

114. After Mr. Mitchell submitted to officer Ramos's sovereignty, he recognized her demands were unlawful so he withdrew his cooperation and walked away.

115. As previously noted officer Ramos had already issued the CT when she was speaking with officer Bihari. The point may appear subtle but this misunderstanding represents the second indication of bias and underscores an organizational ethos callously indifferent to the compass of the constitution.

116. WHEREFORE, Plaintiff, demands judgment against officer Ramos pursuant 42 U.S.C 1983 for initiating the criminal process without probable cause, in violation of the 4th and 14th Amendments to the U.S. Constitution.

117. Plaintiff seeks all available damages, and seeks damages in excess of the arbitrations limits, plus costs and such relief as the Court may deem proper.

A JURY TRIAL IS DEMANDED.

## Cause III

## 1st and 4th Amendment – Unreasonable and in bad faith.

(Paragraphs 1 through 117 are hereby incorporated by reference.)

118.   On 01 February 2016, 11:25am, officer Ramos, Officer Bihari, Officer Woods, officer Stekettee, and officer J. Policarpio seized Mr. Mitchell at his home in a no-knock, warrantless raid and later arrested him at gunpoint, allegedly "for how [he] acted" earlier when he was at the KPD to report witnessing a felony.

119.   **Retaliatory Arrest 1st 4th**

Officer Ramos is sued for a retaliatory arrest of Mr. Mitchell at his home in Kennesaw, GA. at 11:40 am on 01 February 2016 with no probable cause.

120.   Officer Ramos: **Use of Force 4th**

Officer Ramos is sued for the use of unreasonable force in arresting Mr. Mitchell at his home in Kennesaw, GA at 11:40 am on 01 February 2016. Any use of force is unlawful when there exist no probable cause.

121.   Officer Ramos: **Criminal Trespass - State**

Officer Ramos is sued for projecting color of law to remain upon property after being ordered to depart at 11:40 am on 01 February 2016.

**1st and 4th Amendment –**

122.   Officer Bihari: **Retaliatory Arrest 1st 4th**

Officer Bihari is sued for a retaliatory arrest of Mr. Mitchell at his home in Kennesaw, GA. at 11:40 am on 01 February 2016.

123.   Officer Bihari: **Use of Force 4th**

Officer Bihari is sued for the use of unreasonable force in arresting Mr. Mitchell at his home in Kennesaw, GA at 11:40 am on 01 February 2016.

124.   Officer Bihari: **Criminal Trespass - State**

Officer Bihari is sued for projecting color of law to remain upon property after being ordered to depart at 11:40 am on 01 February 2016.

**1st and 4th Amendment –**

125.   Officer Wood: **Retaliatory Arrest 1st 4th**

Officer Wood is sued for a retaliatory arrest of Mr. Mitchell at his home in Kennesaw, GA. at 11:40 am on 01 February 2016.

126.   Officer Wood: **Use of Force 4th**

Officer Wood is sued for the use of unreasonable force in arresting Mr. Mitchell at his home in Kennesaw, GA at 11:40 am on 01 February 2016.

127.   Officer Wood: **Criminal Trespass - State**

Officer Wood is sued for projecting color of law to remain upon property after being ordered to depart at 11:40 am on 01 February 2016.

**1st and 4th Amendment** –

128.   Officer Stekettee: **Retaliatory Arrest 1st 4th**

Officer Stekettee is sued for a retaliatory arrest of Mr. Mitchell at his home in Kennesaw, GA. at 11:40 am on 01 February 2016.

129.   Officer Stekettee: **Use of Force 4th**

Officer Stekettee is sued for the use of unreasonable force in arresting Mr. Mitchell at his home in Kennesaw, GA at 11:40 am on 01 February 2016.

130.   Officer Stekettee: **Criminal Trespass - State**

Officer Stekettee is sued for projecting color of law to remain upon property after being ordered to depart at 11:40 am on 01 February 2016.

**1st and 4th Amendment** –

131.   Officer Policarpio: **Retaliatory Arrest 1st 4th**

Officer Policarpio is sued for a retaliatory arrest of Mr. Mitchell at his home in Kennesaw, GA. at 11:40 am on 01 February 2016.

132.   Officer Policarpio: **Use of Force 4th**

Officer Policarpio is sued for the use of unreasonable force in arresting Mr. Mitchell at his home in Kennesaw, GA at 11:40 am on 01 February 2016.

133.   Officer Policarpio: **Criminal Trespass - State**

Officer Policarpio is sued for projecting color of law to remain upon property after being ordered to depart at 11:40 am on 01 February 2016.

**1st and 4th Amendment –**

Chief Westenberger: **Use of Force 4th**

134.   Chief Westenberger is sued in his individual capacity for monetary damages for the use of unreasonable force in arresting Mr. Mitchell at his home in Kennesaw, GA at 11:40 am on 01 February 2016. Chief Westenberger, or his designated representative, gave the order to enter Mr. Mitchell's home with no arguable probable cause.

135.   WHEREFORE, Plaintiff, demands judgment against officer Ramos pursuant 42 U.S.C 1983 for initiating the criminal process without probable cause, in violation of the 4th and 14th Amendments to the U.S. Constitution.

136.   Plaintiff seeks all available damages, and seeks damages in excess of the arbitrations limits, plus costs and such relief as the Court may deem proper.

A JURY TRIAL IS DEMANDED.

## Cause IV

**State – False Imprisonment**

Officer Policarpio is sued in her individually – supervisory capacity for monetary damages. (Paragraphs 1 through 137 are hereby incorporated by reference.)

137.   Officer Policarpio demonstrated a reckless disregard for the truth and a callous indifference to Mr. Mitchell's Constitutional rights by imprisoning him without probable cause and without arguable probable cause.

138.   The officer sustained the legal process against Mr. Mitchell by using material omissions, material misstatements, and creative shuffling of events to manufacture an ostensible probable cause to prosecute Mr. Mitchell.

139.   WHEREFORE, Plaintiff, demands judgment against officer Policarpio pursuant 42 U.S.C 1983 for sustaining the criminal process without probable cause and without arguable probable cause, in violation of the 4th and 14th Amendments to the U.S. Constitution.

140.   Plaintiff seeks all available damages, and seeks damages in excess of the arbitrations limits, plus costs and such relief as the Court may deem proper.

A JURY TRIAL IS DEMANDED.

## Cause V

4th and 14th Amendment Malicious Prosecution

Officer Westenberger is sued in his individually – supervisory capacity for monetary damages. (Paragraphs 1 through 140 are incorporated by reference.)

141.   On or about 05 February 2016, Chief Westenberger demonstrated a reckless disregard for the truth, and a constitutional indifference by continuing the prosecution of Mr. Mitchell with no probable cause.

142.   The Chief Westenberger sustained the legal process against Mr. Mitchell by using a warrant narrative containing material omissions, material misstatements, and creative shuffling of events to manufacture an ostensible probable cause to prosecute a known innocent man under color of warrant.

143.   It is alleged Chief Westenberger continued the prosecution of Mr. Mitchell to help mask the unlawful conduct of his officers and reflects an organizational ethos callous to the compass of the Constitution.

145.   WHEREFORE, Plaintiff, demands judgment against Chief Westenberger pursuant 42 U.S.C 1983 for sustaining the criminal process without probable cause in violation of the 4th and 14th Amendments to the U.S. Constitution.

146.   Plaintiff seeks all available damages, and seeks damages in excess of the arbitrations limits, plus costs and such relief as the Court may deem proper.

A JURY TRIAL IS DEMANDED

## Cause VI

4th and 14th Amendment Due Process –Prosecution by use of Fraud.

Officer Ramos, officer Policarpio, and Chief Westenberger are each independently sued their individual capacities for monetary damages. (Paragraphs 1 through 146 are incorporated by reference.)

147.   Between the dates of 01 Feb 2016 and 5 Feb 2016, the above named officers continued the criminal process against Mr. Mitchell with knowledge they were prosecuting a known innocent man through the use of fraud. To Wit:

a) The Incident Report attributed to the Clinic has a time stamp matching the time stamp on the 911 call that had been placed by Mr. Mitchell, not the Clinic.

b) The allegations submitted by the Clinic, both telephonically and face-to-face against Mr. Mitchell were embraced as true when they were known to be false.

c) Officer Ramos initial testimony to officer Bihari is materially different than the testimony in the warrant narrative.

b) Both officers Ramos and Policarpio submitted know false statements of fact in their Deputy Report for Incident and callously disregarded the truth.

c) Walking away when issuing a CT does not give rise to probable cause or arguable probable cause.

d) Words or criticisms addressed to an officer does not give rise to probable cause or arguable probable cause.

148. WHEREFORE, Plaintiff, demands judgment against officer Ramos pursuant 42 U.S.C 1983 for sustaining the criminal process without probable cause in violation of the 4th and 14th Amendments to the U.S. Constitution.

Plaintiff, demands judgment against officer Policarpio pursuant 42 U.S.C 1983 for sustaining the criminal process without probable cause in violation of the 4th and 14th Amendments to the U.S. Constitution.

Plaintiff, demands judgment against Chief Westenberger for sustaining the criminal process without probable cause in violation of the 4th and 14th Amendments to the U.S. Constitution.

149. Plaintiff seeks all available damages, and seeks damages in excess of the arbitrations limits, plus costs and such relief as the Court may deem proper.

A JURY TRIAL IS DEMANDED

## Cause VII

4th and 14th Amendment - Use of Force – Violation of Bodily Integrity

Cobb County employee Jane Doe is sued in her individual capacity for monetary damages. (Paragraphs 1 through 150 are hereby incorporated by reference.)

150.   Mr. Mitchell was called into a room arranged as a medical station.

151.   The person in the room was dressed in street attire but served a medical function.

152.   Mr. Mitchell said he did not want to be injected with any substance but was fearful of retaliation after what had happened for his refusal to sign the CT.

153.   Jane Doe said if he refused he would be physically restrained and administered the injection regardless of his desire not to be injected.

154.   WHEREFORE, Plaintiff, demands judgment against Jane Doe pursuant 42 U.S.C 1983 for administering compulsory injections to pre-trial detainees, in violation of the 4th and 14th Amendments to the U.S. Constitution.

155.   Plaintiff seeks all available damages, and seeks damages in excess of the arbitrations limits, plus costs and such relief as the Court may deem proper.

A JURY TRIAL IS DEMANDED

# VII. EXHIBITS LIST

A.    Mr. Mitchell's first call to 911    @    07:28:47

B.    Mr. Mitchell's second call to 911    @    08:33:38

C.    Clinic's only call to 911    @    08:34:40

D.    Incident Report with wrong time    @    08:33:38

E.    Ramos/Salvador/Clinic    @    08:50:00

F.    Ramos/Mitchell/KPD    @    09:20:00

G.    Mitchell Sworn Statement to IA

H.    Westenberger's view of the heroin epidemic.

I.    Recording(s) Authentication Table, copy of Warrant - no address on the face, officer Wood's height compared to fence,

## VIII. DEMAND FOR RELIEF

156.   Defendant's actions harmed Mr. Mitchell's liberty, damaged his finances, and negatively impacted his health through exacerbation of a broad range of medical and emotional symptoms associated with combat related PTSD.

157.   The actions of officers Ramos, officer Policarpio, and officer Westenberger were committed with a callous and deliberate indifference to Mr. Mitchell's Constitutional and State Rights.

158.   **WHEREFORE,** having shown that officers Ramos, officer Bihari, officer Wood, officer Policarpio, and officer Westenberger violated Mr. Mitchell's constitutional rights; Plaintiff demands as follows:

A. Actual damages and cost.

B. The impact of loss on career earnings of $1,000,000

Mr. Mitchell's expertize is in laser electro-optical devises and Industrial Risk Management. Both industries are not lenient on arrest records regardless of the outcome.

C.   Economic, compensatory, general, and special damages in the amount to be determined by a jury and, in an amount in excess of the arbitration limits, plus costs and such relief as the Court may deem proper against officer Ramos, officer Bihari, officer Wood, officer Policarpio, and officer Westenberger in their individual capacities.

D. Punitive damages in an amount to be determined by the enlightened conscience of the jury against Defendants Ramos, Policarpio, and Chief Westenberger for acting with a reckless disregard for the truth and displaying an engrained callous indifference to the boundaries of the Constitution.

E. Economic, compensatory, general, and special damages in the amount to be determined by a jury and, in an amount in excess of the arbitration limits, plus costs and such relief as the Court may deem proper against

- **Cobb County Jane Doe** in her official capacity, for fulfilling the immoral and unconstitutional policy of her employers by administering compulsory injections to pretrial detainees. This person's name and proper employment title will be determined during discovery.

F. Injunctive relief against Cobb County Adult Detention Center to stop compulsory injections of pretrial detainees.

G. For this Court to award all costs of this action as well as an award of attorneys' fees pursuant to 42 U.S.C. §1988.

H. Such other and proper relief as this Court deems proper including any relief under 42 USC 1985.

## CERTIFICATION OF PLAINTIFF

Pursuant to N.D. Ga. Local Rule 7.1 D, I hereby certify that this document is

submitted in Times New Roman and in 14-point type as required by N.D. Ga.

Local Rule 5.1(b).

James Mitchell

VERIFICATION of ___ pages plus _24_ attachments:

Personally appeared before the undersigned attesting officer, duly authorized by

law to administer oaths, came PLAINTIF James Mitchell and after having been

duly sworn, states that the facts contained in the within and foregoing verified

Complaint are true and correct to the best of his knowledge and belief.

James Mitchell                                                This _01_ day of February 2018

Sworn to and subscribed before me                            This _01_ day of February 2018

NOTARY PUBLIC

PATRICK HEALY
NOTARY
EXPIRES
GEORGIA
June 7, 2019
PUBLIC
COBB COUNTY

CERTIFIED MAIL:

To:

32